Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ELIZABETH MARIE RIVERA FIGUEROA<br><br>Apelada<br><br>v.<br><br>JOSÉ ANTONIO ROSA CARRASCO<br><br>Apelante | KLAN202400316 | Apelación procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de Caguas<br><br>Sobre:<br>Divorcio (R.I.)<br><br>Caso Núm.:<br>CG2023RF00554 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

## SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece ante nos la parte apelante, José Antonio Rosa Carrasco, y solicita que revisemos parcialmente la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Relaciones de Familia de Caguas, el 12 de enero de 2024, notificada el 25 de enero de 2024 y la *Resolución sobre Pensión Alimentaria*, reducida a escrito el 27 de enero de 2024. En estas, el *Foro* primario declaró *Ha Lugar* la *Demanda de Divorcio* por la causal de ruptura irreparable y fijó una pensión alimentaria por la cantidad de $750.45 mensual y estableció un plan de pago de $48.80 bisemanal por una deuda retroactiva de $2,537.58.

Por los fundamentos que exponemos a continuación, se confirma la *Sentencia* apelada.

## I

El 14 de agosto de 2023, la señora Elizabeth Marie Rivera Figueroa, parte apelada, incoó demanda de divorcio bajo la causal de ruptura irreparable contra el apelante. El apelante, según consta del expediente, fue debidamente emplazado el 15 de agosto de 2023. Ambas partes, procrearon a una menor durante la vigencia de su

matrimonio, razón por la que se citó a las partes para la vista de fijación de pensión alimentaria provisional el 14 de septiembre de 2023.

A la vista para la fijación de la pensión provisional comparecieron, presencialmente, las partes ante la Examinadora de Pensiones Alimentarias. Ese día, se fijó una la pensión provisional de $125.00 mensuales y se citaron, en corte abierta, a las partes para la vista final de fijación de pensión alimentaria permanente para el 19 de diciembre de 2023. Antes de culminados los procedimientos, la *Examinadora* les solicitó a las partes que, dentro de 15 días, entregaran la documentación requerida, a saber, las Planillas de Información Personal y Económica (PIPE), los últimos 6 talonarios de pago, formularios W-2 correspondientes a los años 2021 y 2022, y la planilla de contribución sobre ingresos.

El 19 de diciembre de 2023 el apelante no compareció a la vista final de fijación de pensión alimentaria ni entregó los documentos requeridos. A esta fecha, la madre custodia, parte apelada, ya había presentado su PIPE y evidencia de ingresos. Para computar la pensión alimentaria, y ante la incomparecencia del apelante, se tomó en consideración el testimonio de la apelada. De este se desprendió que, ambos progenitores, trabajan en el mismo lugar, Panadería La Samaritana, por lo que pudo atestiguar que el alimentante trabaja en promedio de 35 a 40 horas semanales, a razón de $12.00 por hora. Adicional a esto, la Examinadora de Pensiones Alimentarias consideró la información sobre ingresos del apelante presentada en el caso CG2022RF00286, que había sido desistido.[1]

---

[1] Antes del pleito de epígrafe, la apelada había instado una demanda contra el apelante por la misma causal que el caso de autos. En ese caso, el 3 de agosto de 2022 se celebró una vista, en la cual constó información de los ingresos del apelante. Ese caso fue desistido sin perjuicio el 2 de febrero de 2023.

Evaluada la evidencia testifical y documental, la Examinadora de Pensiones Alimentarias le imputó al apelante un ingreso neto mensual de $1,657.50. Al realizar el cómputo, en la pensión alimentaria básica, el ingreso básico de las partes combinado ascendió a $3,777.09, por lo que el ingreso neto mensual del apelante representó el 43.88%. Así, basado en la guía de cómputos, se determinó que procedía imputar $844.00 para cubrir las necesidades básicas de la menor. Adicional a esto, se imputó un total de gastos suplementarios ascendentes a $866.11, basado en la participación de cada uno sobre el ingreso básico combinado. Por la sumatoria de estas cantidades, se recomendó por la Examinadora de Pensiones Alimentarias la imposición de una pensión alimentaria permanente de $750.45 mensual, a razón de $346.00 bisemanal, más un plan de pago de $48.80 bisemanal, por concepto de deuda retroactiva de $2,537.58, por lo adeudado desde el 14 de agosto de 2023 hasta el 31 de diciembre del mismo año.

El 10 de enero de 2024 la apelada presentó *Moción en Solicitud de Anotación de Rebeldía*, toda vez que el apelante no contestó a la demanda. El 11 de enero de 2024 se le anotó la rebeldía al apelante.

Así las cosas, la vista en su fondo del divorcio se llevó a cabo el 12 de enero de 2024. En esta, tras la apelada haber peticionado facultades adicionales no solicitadas en la demanda, el Tribunal levantó la rebeldía al apelante para que se expresara al respecto. Este no tuvo reparo ni objeción alguna en que la custodia la retuviera la apelada y la patria potestad fuera una compartida, concediendo ciertas facultades tutelares a la madre de la menor.

En la referida vista, se le informó al apelante que el 19 de diciembre de 2023, sin su comparecencia, se determinó recomendar una pensión alimentaria de $346.00 bisemanales, más un plan de pago de $48.80 bisemanales. Según la *Minuta* de los procedimientos, el apelante arguyó que no compareció porque entendía que estaba

pautada para el 12 de enero de 2024. El apelante demostró insatisfacción solamente en la cantidad expuesta.[2]

Insatisfecho el apelante, el 17 de enero de 2024, presentó una moción, por derecho propio, en la que solicitó la reconsideración. En la misma, reiteró que no compareció a la vista de fijación de pensión por haber recibido la citación para la vista de divorcio del 12 de enero de 2024, por lo que pensó que se habían consolidado los procedimientos. En el referido pliego anejó los talonarios de empleo y sostuvo que no contaba con los ingresos para pagar la cantidad establecida.

Ese mismo día, la parte apelada presentó *Moción en Oposición a Reconsideración.* Arguyó que el apelante, contrario a lo alegado, fue debidamente citado. Además, sostuvo que el señalamiento le fue recordado en el lugar de empleo y que, a pesar de ello, éste decidió no comparecer ni entregar los documentos solicitados. Luego de evaluados las posturas de las partes, el Tribunal declaró *No Ha Lugar* la *Solicitud de Reconsideración,* determinación que fue notificada el 22 de enero de 2024.

Así las cosas, el día 25 de enero de 2024 el Tribunal notificó la *Sentencia* del 12 de enero de ese mismo año. En esta se redujo a escrito lo resuelto en la vista de divorcio.

Posteriormente, el 5 de febrero de 2024, a través de su representante legal, la parte apelante presentó nuevamente una *Moción en Solicitud de Reconsideración* mediante la cual planteó que se le violentó el debido proceso de ley, toda vez que, la vista a la que se ausentó fue notificada, según expuso el apelante, mediante la *Resolución de la Pensión Provisional* el mismo 19 de diciembre de 2023. Por otra parte, planteó que no se notificó por escrito la anotación de la rebeldía impuesta el 11 de enero de 2024, a pesar

---

[2] Apéndice Recurso de Apelación, págs. 55-57.

de señalar que se levantó la misma al día siguiente. Además, sostuvo que el apelante no renunció inteligentemente a la patria potestad o, al menos, a la restricción de ésta. El 21 de febrero de ese mismo año, el apelante presentó *Moción en Solicitud de Orden Para Que Se Deje Sin Efecto Sentencia del 12 de enero de 2024.* En esta planteó que no se anejó a la *Sentencia*, el *Informe de la Examinadora de Pensiones Alimentarias.*

Así las cosas, el 27 de febrero de 2024, el Tribunal emitió *Resolución sobre Pensión Alimentaria* mediante la cual se anejó *el Informe de la Examinadora de Pensiones Alimentarias.*

Inconforme con las determinaciones del *Foro* primario, el apelante acude ante nos en Apelación en donde plantea los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al dictar Resolución de alimentos y al declarar *No Ha Lugar* la solicitud para dejar sin efecto de forma parcial la *Sentencia* en una clara y manifiesta violación al debido proceso de ley del apelante, toda vez que se incumplió con la falta de notificación adecuada y oportuna de escritos de la parte demandante y del Informe de la Examinadora de Pensiones Alimentarias.

> Erró el Tribunal de Primera Instancia al no garantizar al apelante un debido proceso de ley tras avalar determinaciones tomadas por la Examinadora de Pensiones Alimentarias partiendo de la prueba de un caso previamente desistido.

> Erró el Tribunal de Primera Instancia, Sala Superior de Caguas al conceder la autoridad unilateral a la progenitora sobre los asuntos de la menor, privando tácitamente al apelante de la patria potestad sin el debido proceso de ley.

Luego de analizado el expediente que nos ocupa, y ante el beneficio de la comparecencia de las partes de epígrafe, procedemos a expresarnos.

**II**

**A**

Es sabido que los casos relacionados con alimentos de menores están revestidos del más alto interés público. *James Soto*

*v. Montes James*, 2024 TSPR 27, 213 DPR ____ (2024); *Umpierre Matos v. Juelle Mejías*, 203 DPR 254, 265 (2019). El derecho de un menor a reclamar alimentos tiene sus fundamentos en el derecho a la vida configurado como un derecho de la personalidad, con profundas raíces constitucionales. El Tribunal Supremo de Puerto Rico ha señalado que los menores tienen un derecho fundamental a reclamar alimentos y que, en éstos, el interés no puede ser otro que el bienestar del menor. *James Soto v. Montes James*, supra; *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 535 (2009); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). Los alimentos incluyen todo lo que sea indispensable para el sustento, habitación, vestido, asistencia médica y educación e instrucción del alimentista. Véase, Art. 653 del Código Civil de Puerto Rico de 2020 (Código Civil 2020), 31 LPRA. § 7531.

Ciertamente, la obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre éstos el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Artículo 590 Código Civil 2020, 31 LPRA. § 7241; *Díaz Rodríguez v. García Neris*, supra, pág. 718; *Toro Sotomayor v. Colón Cruz*, supra, pág. 535. Por ello, la cuantía de los alimentos es proporcional a los recursos del alimentante y las necesidades del alimentista y se reduce o aumenta en esta proporción. Artículo 671 Código Civil 2020, 31 LPRA. § 7567.

Para la determinación de la capacidad económica del alimentante, es decir, sus ingresos, a los fines de fijar la pensión alimentaria en beneficio de los menores, se toman en cuenta todos los ingresos devengados por éste, independientemente que hayan sido informados o no en la Planilla de Información Personal y Económica (PIPE). *Franco Resto v. Rivera Aponte*, 187

DPR 137, 151 (2012); *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406, 412 (1993). Además, se toman en consideración el historial de trabajo y los ingresos devengados anteriormente, su profesión, su preparación académica, el estilo de vida y capacidad del alimentante para generar ingresos; la naturaleza y cantidad de las propiedades con las que cuenta; así como la naturaleza de su empleo o profesión y sus otras fuentes de ingresos. Véase Artículo 12 del Reglamento Núm. 8529 de 30 de octubre de 2014,[3] *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico. Rodríguez Rosado v. Zayas Martínez,* supra, pág. 412; *Franco Resto v. Rivera Aponte*, supra, pág. 151.

La labor de determinar los ingresos del alimentante es sumamente importante. Ello, debido a la trascendencia del deber de los padres para alimentar a sus hijos. Por tanto, los tribunales deben escudriñar la prueba que tienen ante sí, de manera tal que se pueda determinar la verdadera situación económica del alimentante y éste no pueda evadir su responsabilidad alimentaria. *Argüello v. Argüello*, supra, a las págs. 72-75. A estos efectos, los tribunales no están limitados a considerar sólo la evidencia testifical o documental sobre los ingresos del alimentante, sino que éstos tienen la facultad de inferir, incluso a base de prueba circunstancial, que el alimentante cuenta con medios suficientes para satisfacer la pensión alimentaria que se le imponga. *Quiles Pérez v. Cardona Rosa,* 171 DPR 443, 456-457 (2007).

Ante esta determinación de ingresos, es decir, de la capacidad económica del alimentante, efectuada por el *Foro* de instancia aplica la norma de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no debemos intervenir con las determinaciones de hecho, la apreciación de la prueba y las

---

[3] Utilizamos el Reglamento 8529 por ser el vigente al momento de los hechos.

adjudicaciones de credibilidad realizadas por los tribunales de instancia. Este Tribunal no puede descartar y sustituir el criterio del *Foro* de instancia para imponer nuestra apreciación de los hechos. *Weber Carrillo v. ELA et al.,* 190 DPR 688, 724 (2014); *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011); *Quiles Pérez v. Cardona Rosa*, supra.

**B**

Por otro lado, uno de los derechos fundamentales que protege nuestro ordenamiento constitucional es aquel que predica que nadie será privado de su libertad o propiedad sin el debido proceso de ley. Bajo tal principio, la parte afectada debe tener la oportunidad de ser oída para defenderse y presentar su caso, con toda la prueba necesaria para sostener su reclamo y defenderse de la prueba sometida en su contra. *Pérez Ríos et al. v. CPE*, 2023 TSPR 136, 213 DPR ___ (2023); *Colón Vega v. Díaz Lebrón*, 211 DPR 548, 573 (2023).

Como parte del debido proceso de ley, se encuentra la notificación a las partes de las determinaciones del Tribunal. La notificación sirve un propósito lógico y sabio en la administración de la justicia, al proteger el derecho de la parte afectada a procurar la revisión judicial de un dictamen adverso. *Plan Salud Union v. Seaboard Sur. Co.,* 182 DPR 714, 722-723 (2011).

La notificación concede a las partes la oportunidad de tomar conocimiento real de la acción tomada y otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad de decidir si ejercen los remedios que la ley les reserva para impugnar la determinación. *Asoc. Vec. Altamesa Este v. Mun. San Juan,* 140 DPR 24, 34 (1996). Ante ello, resulta indispensable que se notifique adecuadamente cualquier determinación que afecte los intereses de una parte. *Íd.*

La notificación adecuada supone la advertencia de lo siguiente: (1) derecho a solicitar reconsideración de la decisión

tomada; (2) derecho a solicitar revisión judicial o juicio de novo, según sea el caso; y (3) los términos correspondientes para ejercitar dichos derechos. El incumplimiento con alguno de estos requisitos resulta en una notificación defectuosa. *García Sierra v. Adm. Corrección*, 192 DPR 936, 941-942 (2015) (Resolución). *Como requisito mínimo del debido proceso de ley y como regla general, a todas las partes hay que notificarles de todo documento que el tribunal tome en cuenta para resolver el caso o el incidente ante su consideración. Sólo así las partes podrán ejercer efectivamente su derecho estatutario a una revisión en los Foros apelativos. Caro v. Cardona,* 158 DPR 592, 605 (2003).

El deber de notificar a las partes una determinación de manera adecuada y completa no constituye un mero requisito. *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736-737 (2010); *Olivo v. Srio. de Hacienda,* 164 DPR 165, 178 (2005). Una notificación insuficiente puede traer consigo consecuencias adversas a la sana administración de la justicia, además de que puede demorar innecesariamente los procedimientos administrativos y, posteriormente, los judiciales. *Picorelli López v. Depto. de Hacienda,* supra, pág. 737; *Olivo v. Srio. de Hacienda,* supra, pág. 178. Por lo dicho, se ha resuelto que, si una parte no es notificada de la determinación conforme a derecho, no se le pueden oponer los términos jurisdiccionales para recurrir de la misma. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ____ (2023); *Caro v. Cardona,* supra, págs. 599-600 (2003).

En fin, la correcta y oportuna notificación de una decisión final es un requisito *sine qua non* para un ordenado sistema judicial. De lo contrario, se crearía una incertidumbre sobre cuándo comienzan a decursar los términos para incoar los remedios post-dictamen. *St. James Sec. v. AEE,* supra; *Dávila Pollock et al. v. R. F.*

*Mortgage*, 182 DPR 86, 94 (2011); *Caro v. Cardona,* supra, pág. 599 (2003).

**C**

Por otro lado, la patria potestad es el conjunto de deberes y facultades atribuibles a los padres sobre la persona y los bienes de los hijos menores no emancipados. *James Soto v. Montes James*, supra; *Gil v. Marini,* 167 DPR 553 (2006); Véase Art. 589 Código Civil 2020, 31 LPRA. § 7241. En el marco de este derecho, la ley impone a los progenitores, respecto a sus hijos, la obligación de alimentarlos, tenerlos en su compañía, educarlos conforme a sus capacidades económicas, así como, también, representarlos en el ejercicio de todas las acciones que puedan resultar en su provecho. Art. 590 del Código Civil 2020, 31 LPRA. §7242.

Ahora bien, en su más completo y efectivo ejercicio, la patria potestad debe practicarse responsablemente en atención a los mejores intereses del menor Artículo 592 del Código Civil 2020, 31 LPRA. §7251. Así también, el Artículo 593 del Código Civil 2020, 31 LPRA. § 7252, establece sobre el ejercicio conjunto de la patria potestad, que ésta se ejercerá con paridad de derechos y responsabilidades, pero pudiera ser ejercida por uno solamente mediando el consentimiento (expreso o tácito) del otro o por decreto judicial.

**III**

Como parte de su primer señalamiento de error, la parte apelante expone que erró el *Foro* de instancia al dictar resolución de alimentos y declarar *No Ha Lugar* la solicitud de dejar sin efecto parcialmente la *Sentencia,* por haberse incumplido con la falta de notificación adecuada y oportuna de los escritos de la parte demandante y el *Informe de la Examinadora de Pensiones Alimentarias.* Adelantamos que no le asiste la razón, por las razones que exponemos adelante.

En primer lugar, de un análisis del expediente se puede corroborar fácilmente que, el único escrito que no se notificó adecuadamente fue la *Solicitud de Anotación de Rebeldía*, la cual fue levantada y dejada sin efecto al día siguiente, concediéndole a la parte apelante la oportunidad de ser oído y defenderse. Siendo así, este *Foro* encuentra académica esa situación y entiende que no es necesario abundar sobre el particular.

Sobre la alegada falta de notificación del *Informe de la Examinadora de Pensiones Alimentarias*, destacamos que del expediente surge que, el 27 de febrero de 2024, se notificó la *Resolución sobre Pensión Alimentaria*, adjuntándose el *Informe de la Examinadora de Pensiones Alimentarias*. De esta manera, se subsanó la falta de notificación del referido *Informe* en la *Sentencia* inicial. Entendemos menester señalar que, es a partir del 27 de febrero de 2024, que comenzó a decursar el término para que el apelante pudiera recurrir la determinación, cosa que hizo. Por lo tanto, nos vemos forzados a resolver que no se le violentó su debido proceso de ley, ni el Tribunal de Primera Instancia incurrió en error alguno al emitir la *Resolución sobre Pensión Alimentaria*, por el contrario, subsanó la deficiencia.

Por otro lado, en su segundo planteamiento de error, el apelante aduce que erró el Tribunal al no garantizarle el debido proceso de ley, tras realizar una determinación "partiendo de la prueba de un caso previamente desistido".[4] Nuevamente, no le asiste la razón.

Es sabido que en nuestro ordenamiento jurídico se permite llevar a cabo las vistas sin la comparecencia de una parte debidamente citada. Así, también, se reconoce la facultad y discreción del Juzgador para imputar los ingresos a computarse

---

[4] Recurso de Apelación, pág. 12.

para la pensión alimentaria. Para esto, se ha establecido que al juzgador se le permite considerar, no solo evidencia documental, sino también testifical y circunstancial, independientemente se hayan informado o no la Planilla de Información Personal y Económica (PIPE). De la misma forma, el Reglamento Núm. 8529 de 30 de octubre de 2014, *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico,* faculta al juzgador a examinar el historial de empleo y de ingresos devengados anteriormente para establecer el ingreso bruto de cada parte.

Primeramente, es pertinente subrayar que del expediente de autos surge que el apelante fue debidamente citado en corte abierta a la vista de fijación de pensión permanente. Es más, este hecho fue confirmado por el apelante en varias ocasiones, incluyendo, en la vista de divorcio el 12 de enero de 2024, donde justificó su incomparecencia previa, con una confusión de su parte sobre las fechas. Así, el 19 de diciembre de 2024, ante la incomparecencia del apelante, la Examinadora, acertadamente, tomó en consideración el testimonio bajo juramento de la madre custodia, la cual declaró trabajar en el mismo lugar que el alimentante. Esta dio fe de que el apelante trabajaba en promedio de 35-40 horas semanales, a razón de $12.00 por hora. Así pues, ante los hechos previamente relatados, este Foro se ve en la obligación de concluir que no hubo tal violación del debido proceso de ley.

En su tercer señalamiento de error, arguye el apelante que incidió el *Foro* primario al conceder las facultades tutelares a la madre custodia, por entender que constituía una privación tácita de la patria potestad sin el debido proceso de ley. No tiene méritos esta alegación.

De un estudio simple del expediente se desprende en la minuta de la vista de divorcio que, a preguntas del Tribunal, la parte apelante expresó que no tuvo reparo a que se le concedieran las

facultades tutelares a la madre custodia. El aquí apelante tuvo la oportunidad de levantar sus defensas, incluso, de haber sido el caso, pudo haber expresado que no comprendía las implicaciones de ceder ciertas facultades tutelares. Sin embargo, la parte apelante fue instruida y consintió expresamente ceder las referidas facultades. Por tanto, habiendo consentido expresamente, no encontramos menester abundar más sobre este señalamiento.

Ahora bien, este Tribunal ha advenido en conocimiento, por conducto de los documentos anejados al Apéndice del alegato de la parte apelada, de la supuesta existencia de un segundo alimentista dependiente del mismo alimentante que no fue considerado para la computación de la pensión alimentaria aquí en controversia. Destacamos que el apelante no planteó ante nos ningún argumento sobre ello en su recurso y que este hecho fue conocido por el Tribunal de Instancia en procedimientos posteriores al aquí objeto de revisión. Sabido es que, en reiteradas ocasiones, el Tribunal Supremo de Puerto Rico ha resuelto que los foros revisores, como regla general, deben abstenerse de adjudicar cuestiones no planteadas en el Tribunal de Primera Instancia. *Sánchez Ruiz v. Higueras Pérez et al.*, 203 DPR 982, 993 (2020); *Trabal Morales v. Ruiz Rodríguez*, 125 DPR 340, 351 (1990). Es por ello que nos abstendremos de adjudicar sobre lo alegado en los referidos documentos, para darle oportunidad al Foro de instancia para que atienda dicho asunto.

En mérito de lo antes expuesto, sostenemos el dictamen que nos ocupa. el mismo es cónsono con el derecho y la prueba, por lo que no resulta preciso que impongamos nuestro criterio sobre el aquel ejercicio por el tribunal sentenciador.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones